IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 09-cv-00150-WDM-KLM

SHARPSHOOTER SPECTRUM VENTURE, LLC,

　　　　Plaintiff,

v.

ROBERT CONSENTINO d/b/a SHARPSHOOTERS PHOTOGRAPHY,

　　　　Defendant.

---

## ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

---

Miller, J.

　　　　This case is before me on Plaintiff's April 6, 2009 Motion for Default Judgment (Docket No. 9) pursuant to Rule 55 of the Federal Rules of Civil Procedure, as well as Plaintiff's June 4, 2009 Supplemental Brief to its Motion for Default Judgment (Docket No. 16).  Upon review of Plaintiff's filings, as well as the testimony, evidence, and argument presented at the May 27, 2009 hearing on the matter, for the reasons that follow, I conclude that the motion should be denied and Plaintiff's Complaint should be dismissed.

Background

　　　　Plaintiff SharpShooter Spectrum Venture LLC is a Delaware limited-liability company with its principal place of business in Wheat Ridge, Colorado.  (Compl. ¶ 1.)  Plaintiff provides photography services to approximately 100 clients in 28 states at buildings, amusement parks, ski resorts, and other venues.  (Test. of Richard Roy at Hr'g on Pl.'s Mot. for Default J.)  Plaintiff provides photography services in New York

around the Statue of Liberty and on spirit cruise boats.  (*Id.*)  Plaintiff has been in the

photography business under the name of SharpShooter for approximately 35 years.

(*Id.*)  Plaintiff owns United States trademarks, registration numbers 2315588 and

2315589, for the mark "SHARPSHOOTER," for portrait photography services.  (Decl. of

Richard Roy ¶ 4, Ex. 5 to Pl.'s Supp. Brief to Pl.'s Mot. for Default J.; Ex. 6 to Pl.'s Supp.

Brief to Pl.'s Mot. for Default J.; Ex. 7 to Pl.'s Supp. Brief to Pl.'s Mot. for Default J..)

Plaintiff also owns Colorado state registrations for the marks "SHARPSHOOTER

IMAGING" and  "SHARPSHOOTER SPECTRUM," registration numbers 20031136451

and 20031136452 respectively.  (Decl. of Richard Roy ¶¶ 5-6, Ex. 5 to Pl.'s Supp. Brief

to Pl.'s Mot. for Default J..)

        Defendant Robert Consentino appears to be the proprietor of a business called

Sharpshooters Photography, based in White Plains, New York.  (Pl.'s Ex. 3, Hr'g on

Pl.'s Mot. for Default J.)  Defendant apparently provides photography services in New

York and elsewhere in the tri-state area and beyond, including photography for

weddings, corporate events, product photography, and more.  (*Id.*)  Defendant has two

Web sites, one located at www.sharpshootersphoto.com and the other located at

www.rtp.homestead.com, both advertising his photography business under the name

"Sharpshooters Photography."  (*Id.*; Pl.'s Ex. C to Pl.'s Mot. for Default J..)  Neither Web

site mentions Colorado.  (Pl.'s Ex. 3, Hr'g on Pl.'s Mot. for Default J.; Pl.'s Ex. C to Pl.'s

Mot. for Default J.)  Based on the testimony of Plaintiff's Chief Financial Officer,

Richard Roy, and the appearance of the Web sites, both Web sites appear to be merely

passive Web sites.  (Pl.'s Ex. 3, Hr'g on Pl.'s Mot. for Default J.; Pl.'s Ex. C to Pl.'s Mot.

for Default J.; (Test. of Richard Roy at Hr'g on Pl.'s Mot. for Default J..)  Neither Web

site appears to be one through which Defendant actively does business, including entering into contracts or transmitting computer files over the Internet.  (*Id.*)  Nor does either Web site appear to be an interactive Web site where users can exchange information with Defendant's host computer.  (*Id.*)  Rather, both Web sites appear to be passive Web sites that allow Defendant to provide information to viewers regarding the services he provides and how to contact him.  (*Id.*)  The Web sites also appear to allow customers to view photographs from their event by clicking on a link on the Web sites. (Pl.'s Ex. 3, Hr'g on Pl.'s Mot. for Default J.; Pl.'s Ex. C to Pl.'s Mot. for Default J..)

Plaintiff first learned that Defendant was operating a photography business under a name similar to Plaintiff's on April 23, 2008 after a customer attempting to contact Plaintiff for wedding photography services reached Defendant in error and Plaintiff was notified of an unhelpful response by Defendant.  (Decl. of Richard Roy ¶ 18, Ex. 5 to Pl.'s Supp. Brief to Pl.'s Mot. for Default J.; Ex. 9 to Pl.'s Supp. Brief to Pl.'s Mot. for Default J..)  After Plaintiff learned of Defendant's response to the client and the confusion that existed between Plaintiff's and Defendant's companies, Plaintiff's Chief Financial Officer, Richard Roy, contacted Defendant in June or July 2008.  (Test. of Richard Roy at Hr'g on Pl.'s Mot. for Default J..)  Defendant claimed he had been contacted by customers on prior occasions who were looking for Plaintiff's business rather than Defendant's.  (*Id.*)  When Plaintiff made Defendant aware that he had ownership of the trademarks for the SharpShooter name, Defendant told Plaintiff he would not do anything about the matter unless forced to do so by a court.  (Decl. of Richard Roy ¶ 22, Ex. 5 to Pl.'s Supp. Brief to Pl.'s Mot. for Default J..)

Plaintiff filed its complaint on January 26, 2009 (Docket No. 1) alleging seven

3

claims for relief: (1) violation of 15 U.S.C. § 114(1), § 43(a) of the Lanham Act; (2) false

designation of origin in violation of 15 U.S.C. § 1125(a); (3) blurring/tarnishment; (4)

false advertising; (5) unfair competition; (6) deceptive trade practices in violation of the

Colorado Consumer Protection Act, Colo.Rev.Stat. § 6-1-105; and (7) common law

unfair competition.  Plaintiff is seeking injunctive relief prohibiting Defendant from using

the name "SharpShooters," "SharpShooter's," "SharpShooters Photography," or any

other confusingly similar name for photography-related services, and requiring

immediate cessation of any business activities under those names or other confusingly

similar names.  (Compl. 7-8.)  Plaintiff is also seeking an injunction requiring Defendant

to grant title of the URL www.sharpshootersphoto.com to Plaintiff.  (*Id.* at 8.)  Plaintiff

seeks an order directing Defendant to certify destruction of all business materials

containing reference to "SharpShooters," and destruction of all advertising, including

web-based advertising  and web-based search criteria "that use language, terms, or

symbols that confuse source, origin, or association of its services" with Plaintiff's

services.  (*Id.*)  Finally, Plaintiff seeks damages in an amount to be determined at trial,

as well as any other relief this Court deems appropriate.

On February 12, 2009, Plaintiff filed an Affidavit of Service showing that

Defendant had been served with a copy of the summons and complaint on February 3,

2009 (Docket No. 5).  To date, Defendant has not filed an answer or any other

responsive pleading.  On February 26, 2009, Plaintiff filed a Motion for Entry of Default

(Docket No. 6), which the Clerk of the Court granted on March 2, 2009 (Docket No. 7).

On April 6, 2009, Plaintiff filed its Motion for Default Judgment (Docket No. 9).  I

conducted a hearing on Plaintiff's Motion for Default Judgment on May 27, 2009, during

which I directed Plaintiff to file additional authority supporting its contention that it was

entitled to relief in the form of transfer of title of the URL www.sharpshootersphoto.com,

and I questioned whether I have jurisdiction over Defendant.  At my request, Plaintiff

filed a supplemental brief on June 4, 2009 (Docket No. 16), addressing the propriety of

the requested relief, but not the issue of jurisdiction.

Standard of Review

Rule 55 of the Federal Rules of Civil Procedure provides in part:

> A default judgment may be entered against a minor or
> incompetent person only if represented by a general guardian,
> conservator, or other like fiduciary who has appeared.  If the
> party against whom a default judgment is sought has appeared
> personally or by a representative, that party or its representative
> must be served with written notice of the application at least 3
> days before the hearing.  The court may conduct hearings or
> make referrals–preserving any federal statutory right to a jury
> trial–when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Fed.R.Civ.P. 55(b)(2).

"Decisions to enter a judgment by default are committed to the district court's

sound discretion . . . ."  *Dennis Garberg & Assocs., Inc. v. Pack-Tech Intern. Corp.*, 115

F.3d 767, 771 (10th Cir. 1997) (citing *Ruplinger v. Rains (In re Rains)*, 946 F.2d 731,

732 (10th Cir. 1991)).  Default judgments are a harsh sanction.  *M.E.N. Co. v. Control

Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987).  "Strong policies favor resolution of

disputes on their merits: The default judgment must normally be viewed as available

5

only when the adversary process has been halted because of an essentially

unresponsive party." *Rains*, 946 F.2d at 732 (quoting *H.F. Livermore Corp. v.*

*Aktiengesellschaft Gebruder Loepfe*, 432 F.3d 689, 691 (D.C. Cir. 1970)).  Accordingly,

in cases involving unresponsive parties, "the diligent party must be protected lest he be

faced with interminable delay and continued uncertainty as to his rights.  The default

judgment remedy serves as such a protection." *Id.* at 733 (quoting *H.F. Livermore*

*Corp.*, 432 F.3d at 691)).  "In civil cases, where a party fails to respond, after notice the

court is ordinarily justified in entering a judgment against the defaulting party." *Deery*

*Am. Corp. v. Artco Equipment Sales, Inc.*, 2007 WL 437762, at \*2 (D.Colo. 2007)

(quoting *Cablevision of Southern Conn., Ltd. Partnership v. Smith*, 141 F.Supp.2d 277,

282 (D.Conn. 2001)).

"Even after entry of default . . .  it remains for the court to consider whether the

unchallenged facts constitute a legitimate basis for the entry of a judgment." *McCabe v.*

*Campos*, 2008 WL 576245, at \*2 (D.Colo. 2008) (citing *Black v. Lane*, 22 F.3d 1395,

1407 (7th Cir. 1994)).  "In determining whether a claim for relief has been established,

the well-pleaded facts of the complaint are deemed true." *Id.* (citing *Dundee Cement*

*Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Unless plaintiff has "failed to state a legal basis for relief or it is clear from the face of the

complaint that the allegations are not susceptible of proof," plaintiff is ordinarily entitled

to a determination of liability upon a default.  *Weft, Inc. v. G.C. Inv. Assocs.*, 630

F.Supp. 1138, 1143 (D.C.N.C. 1986).

"[W]hen entry of a default judgment is sought against a party who has failed to

plead or otherwise defend, the district court has an affirmative duty to look into its

6

jurisdiction both over the subject matter and the parties," in order to "determine that it

has the power to enter the default judgment." *Williams v. Life Savings and Loan*, 802

F.2d 1200, 1203 (10th Cir. 1986).  Plaintiff bears the burden of establishing personal

jurisdiction.  *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th

Cir. 2000).  "[P]laintiff need only made a *prima facie* showing [of jurisdiction] if the

motion is decided only on the basis of the parties' affidavits and other written materials."

*Dennis Garberg*, 115 F.3d at 773.  "[W]hen personal jurisdiction is assessed in an

evidentiary hearing or at a trial . . . the plaintiff generally must establish, by a

preponderance of the evidence, that personal jurisdiction exists."  *Dudnikov*, 514 F.3d at

1070 n.4 (citing *Dennis Garberg*, 115 F.3d at 773).[1]


Discussion

Although personal jurisdiction is a defense that is deemed waived by a party if

not appropriately raised, Fed.R.Civ.P. 12(h)(1), "[d]efects in personal jurisdiction . . . are

not waived by default when a party fails to appear or respond," because "[a] judgment is

void when a court enters it lacking . . . jurisdiction over the parties."  Williams, 802 F.2d

at 1202 (citing *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224-25 (10th Cir. 1979)).

---

[1] In this case, I held a hearing on Plaintiff's Motion for Default Judgment on May 27, 2009.  That hearing focused mainly on the merits of Plaintiff's claim, the relief requested, as well as the efforts made by Plaintiff to notify Defendant of the hearing.  At the close of the hearing, I expressed some concern regarding whether Defendant is subject to personal jurisdiction in Colorado, but no substantial evidence was offered on that point.  Furthermore, due to the fact that Defendant has yet to enter an appearance in this case, the hearing was not an adversarial one, and accordingly, I determine that Plaintiff only needs to make a prima facie showing of personal jurisdiction at this juncture.

Accordingly, "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case." *Dennis Garberg*, 115 F.3d at 772.

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (internal quotations and citations omitted). Because the Lanham Act does not authorize nationwide service of process, *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004), I must decide whether Defendant is amenable to service of process in Colorado. *See Dudnikov*, 514 F.3d at 1070 (reasoning that where the federal statute under which plaintiff sued did not provide for nationwide service of process, "Fed.R.Civ.P. 4(k)(1)(A) commands the district court . . . to apply the law of the state in which the district court sits."). "Colorado's long arm statute . . . confers the maximum jurisdiction permissible consistent with the Due Process Clause," and accordingly, "the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Id.* at 1070.

Turning to the constitutional inquiry, "to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two ways in which a court can find that a defendant has the required minimum contacts sufficient to establish jurisdiction over him. First, "if a defendant has

8

'continuous and systematic general business contacts' with the forum state, it may be subjected to the general jurisdiction of the forum state's courts." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984)).  However, if a defendant's contacts with the forum state are not of the continuous and systematic nature required to subject it to general jurisdiction, "a state's courts may exercise specific jurisdiction over a defendant that 'purposefully directed' its activities at the state's residents, if the cause of action arises out of those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).

In this case, Plaintiff contends that personal jurisdiction over Defendant is proper because Plaintiff was harmed in Colorado.  Plaintiff stated in its Complaint that "this Court has personal jurisdiction over Defendants because Plaintiff's claims arise from Defendant's commission of tortious acts causing damage to Plaintiff in the judicial district." (Compl. ¶ 5.)  Furthermore, Plaintiff's limited questioning of Mr. Roy regarding jurisdictional issues at the May 27, 2009 hearing focused on the fact that it is possible to view Defendant's Web site from Colorado and to call Defendant's office from Colorado, that the Plaintiff's Web site states that Defendant is able to provide photography services in New York, or anywhere in the tri-state area and beyond, and the fact that Defendant sent an unfriendly reply to a customer who was trying to contact Plaintiff but reached Defendant by mistake, thereby causing harm to Plaintiff and its employees in Colorado by affecting its reputation.  (Test. of Richard Roy at Hr'g on Pl.'s Mot. for Default J..)

Defendant's contacts with Colorado are not continuous and systematic,

9

precluding the exercise of general jurisdiction over him.  The only potential basis for

exercising general jurisdiction over Defendant is the maintenance of his Web sites on

the Internet.  The Tenth Circuit Court of Appeals utilizes a sliding scale to determine

whether general jurisdiction can be exercised over a defendant due to its maintenance

of a Web site.  *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th

Cir. 1999) (citing *Patriot Sys., Inc. v. C-Cubed Corp.*, 21 F.Supp.2d 1318, 1323-24 (D.

Utah 1998)).  Personal jurisdiction is certainly established when "'a defendant clearly

does business over the Internet,' such as entering into contracts which require the

'knowing and repeated transmission of computer files over the Internet.'"  *Id.* (quoting

*Patriot Sys.*, 21 F.Supp.2d at 1323-24).  Plaintiff has not presented any information to

support such a finding in this case.  On the other end of the scale, personal jurisdiction

is not established "when the Internet use involves '[a] passive Web site that does little

more than make information available to those who are interested in it,'" and "a middle

category encompasses 'interactive Web sites where a user can exchange information

with the host computer.'  Whether the exercise of jurisdiction is appropriate depends

upon 'the level of interactivity and commercial nature of the exchange of information that

occurs on the Web site.'"  *Id.* (quoting *Patriot Sys.*, 21 F.Supp.2d at 1323-24).  As to

whether Defendant's Web sites are interactive, Plaintiff has presented printouts of

pages from the Web sites which show a link where customers can click and access the

pictures from their event.  However, I have no information indicating that those links

actually work, and more importantly, even if the links do work, it does not appear that

the user exchanges information with the host computer, rather simply accesses files

that are stored on Defendant's Web site.  The Web sites appear principally to be merely

passive Web sites that simply provide information to those accessing them.
Accordingly, I find that Defendant's contacts with Colorado are not sufficiently
systematic and continuous for me to exercise general jurisdiction over him.

However, if Defendant has "purposefully directed" its activities at residents of
Colorado and Plaintiff's injuries "arise out of" Defendant's forum-related activities, the
minimum contacts standard for exercising specific jurisdiction over Defendant will have
been met.  *See Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).

The purposeful direction test is meant to "ensure that an out-of-state defendant is
not bound to appear to account for merely 'random, fortuitous, or attenuated contacts'
with the forum state."  *Id.* (citing *Burger King*, 471 U.S. at 475).  Although various
articulations of the purposeful direction test have emerged in different contexts,  *see
Dudnikov*, 514 F.3d at 1071 (setting forth different articulations of the test in the tort and
contract contexts), the inquiry is necessarily a fact-intensive one.  At the suggestion of a
litigant, the Tenth Circuit recently utilized the factors relied upon by the Court in *Calder
v. Jones*, 465 U.S. 783, to determine whether a defendant's activities were purposefully
directed at the forum state.  The *Calder* framework, as articulated by the court in
*Dudnikov*, provides useful guidance in engaging in this fact-intensive inquiry.

As the court in *Dudnikov* deduced, the Court in *Calder* reasoned that a defendant
has purposefully directed its activities at the forum state when it has engaged in "(a) an
intentional action . . . that was (b) expressly aimed at the forum state . . ., with (c)
knowledge that the brunt of the injury would be felt in the forum state."  514 F.3d at
1072.

The first factor analyzed by the court in *Dudnikov* was whether the defendant

engaged in intentional action.  In this case, Defendant did engage in intentional action,

namely conducting his business under the name Sharpshooters Photography and

posting his Web sites online which advertise his business under that name.  Although

the court in *Dudnikov* did not determine whether a defendant's intentional action must

be wrongful or tortious or whether innocent intentional action suffices, Defendant's

intentional actions in this case include posting his Web sites and conducting business

under the name Sharpshooters Photography, both of which are sufficient to permit an

inference of wrongful, infringing conduct as alleged in Plaintiff's complaint, so I need not

decide whether innocent intentional action would suffice.

  The next factor analyzed by the court in *Dudnikov* was whether the defendant's

intentional action was expressly aimed at the forum state.  "[T]here is some overlap

between this test and *Calder's* additional requirement . . . that a defendant must know

that the harm was suffered in the forum state."  *Dudnikov*, 514 F.3d at 1074-75.

However, the two remain separate inquiries because "the express aiming test focuses

more on a defendant's intentions-where was the focal point of its purposive efforts-while

the latter requirement concentrates on the consequences of the defendant's actions-

where was the alleged harm actually felt by the plaintiff."  The Tenth Circuit has taken a

restrictive approach to the "expressly aimed" requirement, "holding that the forum state

itself must be the 'focal point of the tort.'" *Id.* at 1074 n.9 (quoting *Far West Capital, Inc.*

*v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995)).  The question of whether an Internet

Web site is expressly aimed at any certain location is a complicated one.  On the one

hand, the purpose of creating a Web site is often to create visibility and accessibility

from anywhere in the world, and in that sense, the Web site is, at least in theory,

expressly aimed at all places across the globe.  However, as the Ninth Circuit Court of

Appeals has recognized in a very similar case to this one, if that theory is carried out to

its logical conclusion, "every complaint arising out of alleged trademark infringement on

the Internet would automatically result in personal jurisdiction wherever the plaintiff's

principal place of business is located.  That would not comport with traditional notions of

what qualifies as purposeful activity invoking benefits and protections of the forum

state."  *Cybersell, Inc.*, v. *Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997).  Often the

inquiry revolves around the "'level of interactivity and commercial nature of the

exchange of information that occurs on the Web site' to determine if sufficient contacts

exist to warrant the exercise of jurisdiction," *id.* at 418 (quoting *Zippo Mfg. Co. v. Zippo*

*Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)), as well as whether there

exists "something more to indicate that the defendant purposefully (albeit electronically)

directed his activity in a substantial way to the forum state," *id.* (internal quotations

omitted), including contracts with parties in the forum state, sales to customers in the

forum state, business visits to the forum state, or the number of hits received by a Web

site from residents in the forum state, *id.* (citing *EDIAS Software International, L.L.C. v.*

*BASIS International Ltd.*, 947 F.Supp. 413 (D.Ariz. 1996); *Heroes, Inc. v. Heroes*

*Found.*, 958 F.Supp. 1 (D.D.C. 1996)).

      In this case, although Defendant's Web site can be accessed from Colorado, I

have nothing before me to indicate that Defendant has expressly aimed his intentional

conduct at Colorado.  I have no information regarding whether Defendant has ever had

a customer from Colorado, whether or how often his Web site has been accessed from

Colorado, or anything else indicating that Defendant ever intended to solicit business

from Colorado.  Plaintiff has presented evidence that its employee, Mr. Roy, contacted

Defendant when he discovered Defendant was operating a similar business under a

similar name, a fact which is not insignificant.  In *Intercon*, 205 F.3d at 1246, the

defendant, a Delaware corporation that provided dial-up Internet services, was

mistakenly routing its customers' email messages through the plaintiff's mail server in

Oklahoma.  Once the plaintiff discovered the error, it contacted the defendant on

several occasions, but months passed before the defendant finally corrected the

problem.  The Court in *Intercon* reasoned that the defendant purposefully directed its

conduct toward Oklahoma after the plaintiff notified the defendant of the error because

the "[d]efendant nonetheless continued to provide plaintiff's address to its new

subscribers for a full two months . . . and permitted thousands of its old customers to

access the Oklahoma server for an additional seven weeks, despite having the

technological ability to prevent such access immediately upon discovering the problem."

*Id.* at 1247-48.  The court found important "the fact that defendant purposefully availed

itself of the Oklahoma server for almost four months after being notified of the

erroneous address," characterizing the contact with Oklahoma after notice of the error

as "knowing and intentional."   *Id.* at 1248.  However, in this case, although Plaintiff has

presented evidence that it notified Defendant of his alleged infringing activity and

Defendant did not remove its Web site from the Internet, I have nothing before me to

indicate that Defendant was told that Plaintiff was located in Colorado or that

Defendant's conduct was causing injury specifically in Colorado.  In fact, Plaintiff has

made it clear that although its business started in Colorado and its principal place of

business is located in Colorado, it also does business in 27 other states across the

country.  More importantly, unlike the defendant's activity after being notified in *Intercon*, which involved the defendant actively accessing a computer server that was physically located in the forum state, Defendant's conduct after being notified in this case was of a passive nature, merely leaving his Web site up and running, but not actively directing any contact with Colorado or availing himself of any services in Colorado.

I am certainly sensitive to the fact that because Defendant has yet to file a responsive pleading, Plaintiff has not been able to engage in jurisdictional discovery. However, if I were to enter a default judgment against Defendant without having personal jurisdiction over him, that judgment would be void.  I am also aware of the fact that Plaintiff has shown that the injury caused in this case occurred in Colorado. However, the location of the injury alone, sometimes referred to as the effect of Defendant's conduct, is not sufficient to give me personal jurisdiction over Defendant. Rather, *Calder's* so-called "effects" test requires both that the harm or "effects" to a plaintiff occur in the forum state, as well as that a defendant's actions be aimed at the forum state, *Dudnikov*, 514 F.3d at 1077; *Trujillo v. Williams*, 465 F.3d 1210, 1219 (10th Cir. 2006); *Far West Capital*, 46 F.3d at 1077, and in this case, Plaintiff is unable to establish that Defendant's actions were aimed at the forum state.

Because Plaintiff has not presented a prima facie case that Defendant's intentional action was expressly aimed at the forum state, I find that Plaintiff's Motion for Default Judgment should be denied at this time and Plaintiff should be given the opportunity to present arguments regarding why I have jurisdiction.

Accordingly, it is ordered:

1. Plaintiff's Motions for Default Judgment (Docket Nos. 9, 16) are denied without

prejudice.

   2. Plaintiff shall show cause, on or before December 28, 2009, why this case should not be dismissed for lack of personal jurisdiction over Defendant.  If Plaintiff does not file anything by that date, I may dismiss this case without prejudice without further notice.


DATED at Denver, Colorado, on December 10, 2009.

                                                    BY THE COURT:



                                                    s/ Walker D. Miller

                                                    United States Senior District Judge